IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ACUITY BRANDS, INC. SECURITIES LITIGATION | CIVIL ACTION FILE<br><br>NO. 1:18-CV-2140-MHC |

## ORDER

Before the Court is Lead Plaintiff the Public Employees' Retirement System of Mississippi's Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Mot. for Class Certification") [Doc. 101].

## I.   BACKGROUND

A detailed description of the allegations in this case is set forth in this Court's August 12, 2019, Order ("MTD Order") [Doc. 78], granting in part and denying in part Defendants' motion to dismiss.  To summarize, Plaintiffs allege the following:

Acuity Brands Inc. ("Acuity"), a "provider of lighting and building management solutions for commercial, institutional, industrial, infrastructure, and residential applications," experienced success and rapid growth in the early 2000s that coincided with a surge in non-residential construction and a transition to solid-state LED lighting and "was fueled in large part by its lucrative relationship with

Home Depot, which accounted for 10 to 15 percent of Acuity's net sales in every fiscal year between 2003 and 2015." Consolidated Am. Class Action Compl. ("Compl.") [Doc. 55] ¶¶ 2, 64-66. "In the five years preceding [October 7, 2015], Acuity's sales grew by 58 percent, leading to a rapid increase in earnings per share ("EPS")." Id. ¶ 68. By October 7, 2015, Acuity had realized nine consecutive quarters of record growth, driving the stock price from $44.24 on September 30, 2010, to $182.88 on October 7, 2015. Id. ¶ 69.

By mid-2015, Acuity's prior success and sales growth weakened. Id. ¶ 77. Plaintiffs allege that the factors that fueled Acuity's growth changed, which led to the declining growth:

> The boom in LED lighting brought a massive influx of new competitors into the market, which drove down prices, eroded Acuity's market share, and adversely impacted Acuity's ability to maintain its upward sales trajectory. Indeed, shortly prior to and during the Class Period,[1] Acuity experienced a decline in its rate of sales growth, which made it impossible for Acuity to legitimately sustain its historical growth rate.

Id. ¶ 75 (footnote added). Plaintiffs allege that the primary catalyst for the declining growth was the increased competition in the LED lighting space, and that Acuity's failed expansion into the smart lighting solutions and declining sales to Home Depot were also contributing factors. Id. ¶¶ 77, 97-106.

---

[1] The Class Period is October 7, 2015, through April 3, 2017. Id. ¶ 1.

2

The crux of this lawsuit is that "[r]ather than admit the truth about Acuity's lagging business, Defendants downplayed the impact of this negative trend while touting Acuity's purportedly successful navigation around it." Id. ¶ 75. "Instead of acknowledging that a confluence of factors was adversely impacting Acuity's growth and performance, Defendants concealed and misrepresented the true state of affairs at the Company." Id. ¶ 7. Plaintiffs allege that, during the Class Period, Defendants made a series of material misrepresentations that concealed the truth and misrepresented the true state of affairs regarding Acuity's ability to maintain the remarkable rate of sales growth. Id. ¶ 2. Plaintiffs' theory of liability is that Acuity's misstatements artificially inflated Acuity's share price causing Plaintiffs to purchase shares at inflated prices.

## A.    Alleged Misrepresentations Made by Defendants

Rather than admit that Acuity was experiencing a decline in its growth rate due to increased competition among LED suppliers, lower LED prices, and a deterioration in its long-standing relationship with Home Depot, Plaintiffs allege that Acuity concealed the truth, which temporarily inflated sales numbers during the Class Period. Id. ¶ 245. Plaintiffs' Complaint includes allegations that Defendants made a series of misrepresentations regarding: "(i) the causes for Acuity's quarterly financial results, including its reported sales; (ii) the impact of

3

increased competition on Acuity's sales; (iii) Acuity's relationship with Home Depot; and (iv) Acuity's 'order rates.'" Id.

**B.   Stock Price Declines After Reports of Declining Sales**

Plaintiffs allege that Defendants' misrepresentations achieved their intended effect of artificially inflating Acuity's stock price: "Acuity's stock price rose from an opening price of $181.87 per share on the first day of the Class Period, by over $97, to a Class Period high of $279.15, on August 23, 2016." Id. ¶ 193. However, the stock price subsequently declined once Acuity's declining sales were revealed.

On October 5, 2016, Acuity reported its fourth quarter 2016 financial results, "including net sales of $925.5 million, which fell below consensus estimates of $946.53 million." Id. ¶ 210. This report led to a stock price decline of $12.10 per share, or 4.7 percent. Id. ¶ 213. The first quarter of 2017 report on January 9, 2017, detailed a second consecutive disappointing quarter of sales, "including sales of only $851.2 million as compared to consensus estimates of $896.2 million." Id. ¶ 222. Following news of this report, the Acuity stock price declined another $34.85 per share, approximately 14.7 percent. Id. ¶ 224. On April 4, 2017, Acuity announced a third consecutive quarter of lower than expected sales growth. Id. ¶ 237. Acuity reported that in the second quarter of 2017, Acuity experienced "net sales of $804.7 million, an increase of only 3.5 percent over the prior year, which

fell well below analysts' consensus expectations of $827.25 million in revenue."

Id. Following the announcement of the second quarter 2017 report, Acuity's stock

price dropped $12.01 per share, approximately 4.7 percent.  Id. ¶ 305.[2]

## II.    PROCEDURAL BACKGROUND

Based on the foregoing facts, Lead Plaintiff the Public Employees'

Retirement System of Mississippi brought this class action on behalf of all persons

or entities ("Plaintiffs") who purchased or otherwise acquired Acuity common

stock during the Class Period, against Acuity and Acuity executives for violations

of the Securities Exchange Act of 1934 ("Exchange Act").  Id. ¶ 1.  As initially

filed, the two-count Complaint was based upon forty-seven purported false and

misleading statements and omissions Defendants allegedly made during the Class

Period.  Id. ¶¶ 104-29.

On August 12, 2019, this Court entered the MTD Order granting in part and

denying in part Defendants' motion to dismiss.  The result of the MTD Order is

that Plaintiffs' claims were dismissed to the extent they relied on forty-two of the

forty-seven statements that were originally a part of the case.  "Only Plaintiffs'

claims for (1) violations of § 10(b) of the Exchange Act and implementing Rule

---

[2] The October 5, 2016, January 9, 2017, and April 4, 2017, reports are collectively
referred to as the "Curative Disclosures."

10b-5 (Count I) and (2) violations of § 20(a) of the Exchange Act (Count II), based on Statement Nos. 34-37 and 39, remain in this case." MTD Order at 83. In other words, Plaintiffs' remaining claims are based only on the alleged misstatements about the known impact of competition on Acuity's sales growth and the alleged misstatements about Acuity's relationship with Home Depot. See Chart at Stmts. Nos. 34-37, 39.

## III.   LEGAL STANDARD

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)[3]).

If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then meet the requirements listed in Federal Rule of Civil Procedure 23. "A class action may be maintained only when it satisfies all the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

alternative requirements of Rule 23(b)." Jackson v. Motel 6 Multipurpose, Inc.,

130 F.3d 999, 1005 (11th Cir. 1997) (footnotes omitted).  Rule 23(a) requires

Plaintiffs to show that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  "Those four requirements commonly are referred to as the

prerequisites of numerosity, commonality, typicality, and adequacy of

representation, and they are designed to limit class claims to those fairly

encompassed by the named plaintiffs' individual claims." Piazza v. Ebsco Indus.,

Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (internal punctuation omitted).

If Rule 23(a) is satisfied, Rule 23(b) further provides that a class action may

be maintained only where one of the three following requirements is met:

> (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation, see FED. R. CIV. P. 23(b)(1);
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or

declaratory relief is appropriate respecting the class as a whole, <u>see</u>
FED. R. CIV. P. 23(b)(2); or

(3) questions of law or fact common to the members of the class
predominate over any questions affecting only individual members,
and a class action is superior to other available methods for fair and
efficient adjudication of the controversy, <u>see</u> FED. R. CIV. P.
23(b)(3).

The party seeking class certification bears the burden of showing that the Rule 23

requirements are met. <u>Valley Drug Co. v. Geneva Pharm., Inc.</u>, 350 F.3d 1181,

1187 (11th Cir. 2003).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries

at the certification stage," and the merits of a suit may be considered "only to the

extent—that they are relevant to determining whether the Rule 23 prerequisites for

class certification are satisfied." <u>Amgen Inc. v. Conn. Retirement Plans & Tr.</u>

<u>Funds</u>, 568 U.S. 455, 466 (2013). Nevertheless, courts must perform a "rigorous

analysis" to ensure that Rule 23's requirements are satisfied before certifying a

class, <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982), even where some of the

requirements are not in dispute, <u>Valley Drug Co. v. Geneva Pharm., Inc.</u>, 350 F.3d

1181, 1188 (11th Cir. 2003), or where the Court must decide disputed questions of

fact that bear on the inquiry, <u>Brown v. Electrolux Home Prods., Inc.</u>, 817 F.3d

1225, 1233–34 (11th Cir. 2016). <u>See also Wal-Mart Stores, Inc. v. Dukes</u>, 564

U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A

8

party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc."); <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 307 (3d Cir. 2008) ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."). This "rigorous analysis" frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim." <u>M. H. v. Berry</u>, No. 1:15-CV-1427-TWT, 2017 WL 2570262, at *3 (N.D. Ga. June 14, 2017) (citing <u>Dukes</u>, 564 U.S. at 351-52).

## IV.   DISCUSSION

Plaintiffs contend that all of the requirements of Rule 23 have been met. Mem. of Law in Supp. of Lead Pl.'s Mot. for Class Cert. [Doc. 101-1]. There is no dispute that Plaintiffs have satisfied the four requirements of Rule 23(a). <u>See</u> Defs.' Mem. in Opp'n to Lead Pl.'s Mot. for Class Cert. ("Defs.' Opp'n") [Doc. 110]. However, Defendants contend that Plaintiffs have not carried their burden to prove that the predominance requirement of Rule 23(b)(3) is satisfied. <u>Id.</u> Defendants argue that Plaintiffs have not shown that their proposed method for calculating class-wide damages is consistent with their theory of liability as

required by the United States Supreme Court's ruling <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27 (2013).  <u>Id.</u>

Comcast was an antitrust action in which the plaintiffs alleged that Comcast engaged in unlawful, anticompetitive conduct to monopolize the cable television market in the Philadelphia area.  <u>Comcast</u>, 569 U.S. at 29-30.  The plaintiffs advanced four theories to support their antitrust claims, but the district court only certified the class action as to one theory—that Comcast acquired a significant share of the Philadelphia area, which unlawfully deterred competitors, or "overbuilders," from entering the market.  <u>Id.</u> at 31.  The trial court found that "damages resulting from overbuilder-deterrence impact could be calculated on a classwide basis" and would not result in thousands of mini-trials even though the plaintiffs' expert acknowledged that his damages model did not isolate damages resulting from any one of the four theories of liability.  <u>Id.</u>

The Supreme Court held that the plaintiffs' class action was improperly certified under Rule 23(b)(3).  <u>Id.</u> at 38.  The Supreme Court concluded that the plaintiffs' damages model was insufficient to establish predominance because the model did not isolate the impact of overbuilder deterrence theory from the other three antitrust theories of liability proposed by the plaintiffs.  <u>Id.</u> at 37-38.

Defendants argue that, under <u>Comcast</u>, a plaintiff must establish that its
method for calculating class-wide damages will "measure only those damages
attributable to [plaintiff's] theory of liability." Defs.' Opp'n at 1-3, 7-8 (quoting
<u>Comcast</u>, 569 U.S. at 35 ("If the [damages] model does not even attempt to do that,
it cannot possibly establish that damages are susceptible of measurement across the
entire class for purposes of Rule 23(b)(3).")). Defendants make several discrete
arguments that Plaintiffs' proposed damages model is not capable of identifying
only that part of the damages (represented by the decline in Acuity's stock price
after the Curative Disclosures) attributable to the artificial inflation related to the
five remaining misstatements that survived the MTD Order. <u>Id.</u> at 7-25. The
Court will consider Defendants' arguments *seriatim*.

### A.   Whether Plaintiffs' Damages Model Improperly Based on Statements That Were Dismissed by This Court

Defendants argue that Plaintiffs' damages model does not meet the
predominance requirement of Rule 23(b)(3) as articulated in <u>Comcast</u> because
Plaintiffs measure damages based on all forty-seven statements in five categories
that were originally a part of their lawsuit instead of limiting it to the five
statements from two categories of statements that survived after this Court's
August 12, 2019, Order. Defs.' Opp'n at 9-12. Specifically, Defendants argue that
Plaintiffs' expert's damages model purports to measure damages "attributable to

all *forty-seven* initially-challenged statements, not just the five statements

remaining in issue." Id. at 11. Defendants contend that this model "fails to

distinguish between injury allegedly attributable to theories that are no longer at

issue in the case and injury allegedly attributable to the surviving theories" and, as

such, violates the mandate of Comcast that any damage model be "susceptible of

measurement across the entire class for purposes of Rule 23(b)(3)." Id. at 11-12

(quoting Comcast, 569 U.S. at 35).

As Defendants concede, Plaintiffs have one theory of liability that resulted

in one uniform injury:

> Plaintiff's theory of liability is that Defendants made false and
> misleading statements about the impact of increased competition on
> Acuity's financial performance and its relationship with Home Depot.
> Plaintiff contends that these statements artificially inflated or
> maintained the price of Acuity's stock, and that Plaintiff suffered losses
> when the artificial inflation was removed from the stock price when the
> relevant truth was revealed.

Defs.' Opp'n at 7 (internal citation and quotation omitted); see also Tr. of Class

Certification Mot. Video Teleconference (Aug. 19, 2020) ("Class Certification

Mot. Hr'g Tr.") [Doc. 129] at 9 (including argument from counsel for Plaintiffs

that Plaintiffs are relying on "a very simple uniform liability theory" involving

"defendants' false and misleading statements leading to artificial inflation and

investors overpaying for their shares. And when the truth was revealed, the

artificial inflation was removed causing a single type of damage.  So we have a single uniform theory tied to a single type of damage, out-of-pocket damages, which this is a tried and true methodology that's been used in virtually every case that's come down since the PSLRA was enacted.").

Plaintiffs' expert articulates an approach to calculate damages based on this theory of liability using an accepted event study methodology that examines information and evidence common to all class members to measure (1) the artificial inflation in Acuity stock for every day of the class period and (2) out-of-pocket damages for all class members.  Expert Report of Joseph R. Mason, PhD ("Mason") (Nov. 25, 2019) ("Pls.' Expert Report") [Doc. 101-3] ¶¶ 89-99.  Mason explains:

> At any time during the Class Period, share price inflation, like the share price itself, is identical for all Acuity shares traded on the NYSE. Damages are therefore calculated in the same way for all class members, based on the timing and volume of each class member's transactions.  Once share price inflation during the Class Period has been determined, one may compute damages arising from share price inflation for any and all members of the proposed class by calculating the difference between: (a) share price inflation associated with shares purchased at the time they were purchased; and, if necessary, (b) share price inflation associated with shares sold at the time they were sold after one or more Curative Disclosure event.  This method is widely accepted and applies to any and all members of the proposed class.

Id. ¶ 90.  Defendants do not dispute Mason's contention that "[t]he methods and techniques I describe are widely accepted and may be applied to any and all

13

members of the proposed Class." Id. ¶ 99; see Expert Report of David C. Smith,

PhD (Feb. 4, 2020) ("Defs.' Expert Report") [Doc. 110-3] ¶ 25 ("I understand that

the most common method for calculating economic damages in a Rule 10b-5

matter is the out-of-pocket measure of damages."); Class Certification Mot. Hr'g

Tr. at 35 (admitting that the out-of-pocket measure of damages is "absolutely a

common method" for calculating damages). In fact, Defendants' expert

acknowledged during his deposition that he understood that the ruling in Comcast

requires only that Plaintiffs present a common damages methodology that could be

applied to the class as a whole that measured only those damages attributable to

Plaintiffs' theory of liability. Tr. Dep. of David Carl Smith (Apr. 20, 2020)

("Smith Dep.") [Doc. 110-2] at 103-04; Defs.' Expert Report ¶ 29 ("I understand

from defense counsel that, per the Supreme Court's Comcast ruling, although

Plaintiff is not yet required to calculate damages, Plaintiff is required to

demonstrate at the class certification phase that a methodology exists for

calculating damages (i) using a common methodology applied to the class as a

whole that (ii) measures only those damages attributable to Plaintiff's liability

theory."). Defendants' expert testified further that he is not disputing Plaintiffs'

contention that they are presenting a "common methodology for calculating

damages" that can be "applied to the class as a whole." Smith Dep. at 104-05.

14

The Court finds that Plaintiffs propose to calculate damages using a common

methodology in a manner that can be applied to the class as a whole based on their

lone theory of liability.  This is all that Rule 23(b)(3) and <u>Comcast</u> require.

<u>Comcast</u> "simply requires a plaintiff to show a linkage between its theory of

liability and theory of damages." <u>City of Sunrise Gen. Emps.' Ret. Plan v.</u>

<u>FleetCor Techs., Inc.</u>, No. 1:17-CV-02207-LMM, 2019 WL 3449671, at *6-7

(N.D. Ga. July 17, 2019) (finding that plaintiff's "out-of-pocket" method which

measures damages as the artificial inflation per share at the time of purchase less

the artificial inflation at the time of sale was the "the standard and well-settled

formula for assessing damages for each class member" and that it was "sufficiently

linked to [plaintiff's] theory of liability to satisfy predominance.").  "In short, in

order to certify a class, the damages methodology must be 'sound' and must

'produce commonality of damages.'" <u>Ludlow v. BP, P.L.C.</u>, 800 F.3d 674, 683

(5th Cir. 2015) (quoting <u>Comcast</u>, 569 U.S. at 37) (internal punctuation omitted)).

"Comcast requires a 'sound' methodology, not certainty." <u>Id.</u> at 685 (finding that

the use of "out-of-pocket" damages methodology satisfied the plaintiffs'

obligations under Rule 23); <u>see also</u> <u>In re BP p.l.c. Sec. Litig.</u>, No. 10-MD-2185,

2014 WL 2112823, at *13 (S.D. Tex. May 20, 2014), <u>aff'd sub nom.</u>, <u>Ludlow v.</u>

<u>BP, P.L.C.</u>, 800 F.3d 674 (5th Cir. 2015) ("The Court reiterates its understanding

15

that Plaintiffs' task at the class certification stage is to present a legally viable, internally consistent, and truly classwide approach to calculating damages. Whether Plaintiffs have properly executed under the approach is a question for a different day.").

As part of their argument that Plaintiffs have not carried their burden under Rule 23(b) as articulated in <u>Comcast</u>, Defendants argue that "measuring out-of-pocket damages requires a plaintiff to identify and isolate the portions of declines in the subject stock price that are 'attributable to the dissipation of the fraud-induced inflation.'" Defs.' Opp'n at 8 (quoting <u>Hubbard v. BankAtlantic</u>, 688 F.3d 713, 726 (11th Cir. 2012)). Defendants' reliance on <u>Hubbard</u>, a case that dealt with the sufficiency of evidence to support a finding of loss causation in a motion for judgment as a matter of law after trial, is misplaced. <u>Hubbard</u>, 688 F.3d at 726. <u>Hubbard</u> did not address a damages model in the context of a motion for class certification, nor did the opinion even mention <u>Comcast</u>.

There is a substantial question whether <u>Comcast</u> has any applicability to the securities fraud context. When the Court inquired of Defendants' counsel at oral argument whether he could name a single case in this circuit that has applied the rationale in Comcast to deny a motion for class certification in a securities fraud case, he could not name one. Class Certification Mot. Hr'g Tr. at 20. Indeed,

there are two cases in this district which have rejected such applicability.  In

Monroe Cty. Emps.' Ret. Sys. v. S. Co., 332 F.R.D. 370, 397 (N.D. Ga. 2019), the

defendants, relying on Comcast, argued that the damages model presented by the

plaintiffs was inconsistent with their theory of liability.  The district court rejected

the argument:

> It is axiomatic that individualized damages calculations are generally insufficient to foreclose class certification, and particularly so where the central liability question is common to each class member.  See, e.g., Carriuolo v. Gen. Motors Co., 823 F.3d 977, 988 (11th Cir. 2016); In re Delta/AirTran Baggage Fee Antitrust Litig., 317 F.R.D. 675, 686 (N.D. Ga. 2016).  Indeed, nothing in Rule 23(b)(3) requires Plaintiffs to prove predominance separately as to both liability and damages; nor did the Supreme Court set forth such a standard in Comcast. See Carriuolo, 823 F.3d at 988; Roach v. T.L. Cannon Corp., 778 F.3d 401, 407 (2d Cir. 2015) ("Comcast . . . did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance."); Butler v. Sears, Roebuck & Co., 727 F.3d 796, 801 (7th Cir. 2013) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."); Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 987 (9th Cir. 2015) (same).

> Thus, at the class certification stage, while the Court must determine whether Plaintiffs have articulated a damages model capable of calculating damages stemming from the Defendants' actions on a class-wide basis, a determination in the negative is not necessarily fatal to class certification.  Rather, if damages cannot be ascertained by a methodology applicable to all class members, the Court must then consider whether questions of individual damages overwhelm the questions of liability that are subject to common proof.  Nevertheless,

because the Court finds that Plaintiffs have proffered a damages model consistent with their theory of liability and capable of calculating damages on a class-wide and per share basis, the Court does not need to reach the latter inquiry.

Monroe Cty. Emps.' Ret. Sys., 332 F.R.D. at 397-98 (footnote omitted).

In addition, in City of Sunrise, the defendants contended that the plaintiff failed to satisfy the predominance requirements set forth in Comcast because the plaintiff "merely proposed an event-study methodology to measure out-of-pocket damages." City of Sunrise, 2019 WL 3449671, at *6. The district court again rejected the Comcast analogy:

> [T]he Supreme Court in Comcast "did not hold that individual damages necessarily defeat predominance or that a plaintiff seeking class certification must present an expert damages model." [Brown v.] Electrolux [Home Prods., Inc.], 817 F.3d [1225,] 1238 [(11th Cir. 2016)]. Indeed, Comcast "simply requires a plaintiff to show a linkage between its theory of liability and theory of damages." Cromeans v. Morgan Keegan & Co., 303 F.R.D. 543, 559 (W.D. Mo. 2014). Here, Plaintiff's theory of liability is that Defendants made public misstatements that artificially inflated stock price and when the truth was later revealed, this inflation was removed from the stock price.
>
> ****
> Thus, Plaintiff's damage model is sufficiently linked to its theory of liability to satisfy predominance.

Id., 2019 WL 3449671, at *6-7 (footnote omitted); see also Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 374-75 (3d Cir. 2015) (holding that the Comcast "predominance analysis was specific to the antitrust claim at issue" and

18

recognizing that "individual damages calculations do not preclude class certification under Rule 23(b)(3).").

Defendants' argument that Plaintiffs' damages calculation is improperly based on statements and categories of statements that were excluded from consideration after the MTD Order is more appropriately considered and decided at a later stage of the litigation. See Vrakas v. United States Steel Corp., No. 17-579, 2019 WL 7372041, at *10 (W.D. Pa. Dec. 31, 2019) (holding that the question of whether misstatements that were dismissed from the action ultimately will need to be disaggregated "are premature, and do not affect whether common issues of law or fact predominate at this stage."). Defendants do not argue that Plaintiffs' theory of liability has been excluded from consideration by the Court's MTD Order. Defendants' argument does not present any issue with regard to the application of Plaintiffs' damage methodology on a class-wide basis. Accordingly, Defendants' argument does not present a valid reason why Plaintiffs are unable to satisfy the predominance requirement of Rule 23(b)(3).

### B. Whether Plaintiffs' Damages Model Improperly Relies on Curative Disclosures That Do Not Mention LED Competition or the Home Depot Relationship

Defendants argue that Plaintiffs have "not shown how damages attributable to dissipation of alleged artificial inflation purportedly caused by misstatements

about the impact of LED competition on Acuity's overall business and relationship with Home Depot can be measured by examining stock price declines following Acuity's quarterly earnings reports on the Curative Disclosure Dates." Defs.' Opp'n at 12. Defendants point out that the three Curative Disclosures relied upon by Plaintiffs in this case do not mention LED competition or Acuity's relationship with Home Depot. Id. at 12-15. Defendants assert that

> [i]n the absence of any disclosure about the impact of increasing LED competition on Acuity's business and relationship with Home Depot on the Curative Disclosure Dates, it is unclear, and Plaintiff has not shown, how Plaintiff could measure damages "attributable to the dissipation of the fraud-induced inflation" by examining price declines on those dates.

Id. at 14 (quoting Hubbard, 688 F.3d at 726).

The predominance requirement in Rule 23(b)(3) focuses on whether "the questions of law or fact common to class members predominate over any questions affecting only individual members." Electrolux Home Products, 817 F.3d at 1232 (quoting FED. R. CIV. P. 23(b)(3)). "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." Id. at 1234 (internal punctuation and quotation omitted).

By arguing that Plaintiffs' damages model fails to show how the damages were attributable to the Curative Disclosures, Defendants are focused on loss

20

causation and not focused on the predominance inquiry before the Court on the present Motion for Class Certification. Notably, Defendants do not argue that the damages model, however flawed it may be, is not based on Plaintiffs' lone theory of liability. Nor do Defendants argue that the damages model is inapplicable to the class as a whole. The fact that Defendants' argument is more appropriately raised at a later stage of litigation is evident by the fact that the only case Defendants cite examines the sufficiency of evidence to support a finding of loss causation addressed in a motion for judgment as a matter of law after trial, and does not discuss predominance or even mention Rule 23 or Comcast. See Defs.' Opp'n at 12-15 (citing Hubbard, 688 F.3d at 726). Defendants fail to articulate why the absence of certain facts in the Curative Disclosures renders Plaintiffs' damage model incapable of being applied equally on a class-wide basis.

## C. Whether Plaintiffs' Damages Model Fails to Disentangle Damages Associated With Potential Confounding Causes

Defendants argue that Plaintiffs have not demonstrated that their damages model will be able to (1) disentangle any portions of the observed price declines attributable to the revelation of the alleged "truth" from other information not related to the alleged misstatements, or (2) account for changes in inflation due to increasing significance of LED sales to Acuity's business over the Class Period. Defs.' Opp'n at 15-18. Again quoting the Hubbard opinion, Defendants contend

that Plaintiffs' damages model is flawed because it does not demonstrate how it can "separate out the portions of ensuing stock price declines attributable to causes unrelated to the alleged fraud, including contemporaneous disclosures of other adverse information not related to the alleged fraud." Id. at 15.[4] The Court finds that this is a loss causation argument not appropriate for this Court's consideration on the present Motion for Class Certification.

"To the extent that Defendants argue that Plaintiff's damages model fails to disentangle the impact of old or non-fraud information released on the same day as the corrective disclosures, Plaintiff is not required to prove loss causation at the class certification stage." City of Sunrise, 2019 WL 3449671, at *7 n.2 (citing Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 813 (2011) ("The Court of Appeals erred by requiring [the plaintiff] to show loss causation as a condition of obtaining class certification.")).

> To the extent that Defendants argue that confounding information will be difficult to desegregate from the impact of the alleged corrective disclosure, Plaintiffs are not required to prove loss causation at the class

---

[4] In addition to Hubbard, Defendants cite Robbins v. Koger Props., Inc., 116 F.3d 1441, 1443 (11th Cir. 1997), a case in which the Eleventh Circuit Court of Appeals considered the district court's denial of a motion for judgment as a matter of law related to the sufficiency of evidence of proof of loss. That case did not involve Rule 23 or class certification issues and pre-dated Comcast by more than fifteen years.

certification stage, and nothing in Comcast requires an expert to perform his analyses at the class certification stage.

Thorpe v. Walter Inv. Mgmt., Corp., No. 1:14-CV-20880-UU, 2016 WL 4006661, at *16 (S.D. Fla. Mar. 16, 2016).

Notwithstanding Defendants' contention that it does not disentangle potential confounding information, this Court finds that Plaintiffs' damages model is based on its theory of liability and can be applied on a class-wide basis. See Monroe Cty. Emps.' Ret. Sys., 332 F.R.D. at 399 (rejecting the argument that because the damage expert failed to articulate the valuation tools he ultimately intended to use, he "failed to articulate a class-wide damages model here" because "such specification is not required at this stage"); Di Donato v. Insys Therapeutics, Inc., 333 F.R.D. 427, 448 (D. Ariz. 2019) (rejecting the argument that a damages model that failed to disaggregate potential confounding information was incapable of class certification and that the plaintiff "proposed a method of calculating damages that is consistent with his theory of liability and can be applied classwide" and that "[a]t the class certification stage, he is not required to do more").

### D.    Whether Plaintiffs' "Back-Casting" Approach Articulated in its Damages Model Fails to Reliably Measure Damages

Defendants argue that Plaintiffs have not shown that the "back-casting methodology" proposed by their expert cannot account for differences in the level

of inflation over the Class Period. Defs.' Opp'n at 18-20. Specifically, Defendants argue that Acuity's business and economic environment surrounding it "changed materially over the course of the one-and-a-half-year Class Period proposed here, making Plaintiff's proposed model an unreliable approach to measuring only those damages attributable to Plaintiff's theory of liability." Id. at 19. Defendants also assert that Plaintiffs have not demonstrated that the back-casting methodology can reliably calculate only the damages attributable to Plaintiffs' alternative theory that the Curative Disclosures constituted materializations of concealed risk. Id. at 20-25.

Pretermitting an analysis of the merits of Defendants' arguments, the Court finds that Plaintiffs' expert has not committed to any one particular methodology to measure inflation. As Plaintiffs' expert Mason explained, he has not yet committed to any particular methodology to measure inflation and it would be inappropriate to do so before fact discovery has concluded, because the concept of "backcasting" includes

> an array of widely-accepted economic tools and techniques that may be used to appropriately adjust observed market reaction to new information backwards during the Class Period, depending on facts and circumstances (including changing business conditions). I understand further that such analyses are typically performed during the merits stage of a Rule 10b-5 case when addressing loss causation and calculating damages, relying upon a relevant factual record that is complete, or at least materially so, with regard to such aspects of the

case.   Contrary to Dr. Smith's assertions, it is both typical and appropriate that I would expect to detail the specific facts and assumptions used in my damages model once I have considered that factual record.  But the information required to properly implement any particular technique cannot be known before fact discovery yields the information that could be used to formulate, for example, the appropriate but-for informational disclosures.

Expert Reply Report of Mason (Apr. 24, 2020) [Doc. 115-2] ¶ 20; see also id. ¶ 29 ("I do not intend to, nor have I stated any intention to, apply estimates of abnormal returns resulting from the corrective disclosures backwards, on either a constant dollar or constant percentage basis, without first satisfying myself through economic analysis that such an approach would be adequately supported and appropriate in this case.  Rather, if asked to so, I intend to consider the facts and circumstances of the case, revealed through the discovery process, in order to measure how, if at all, Acuity's common stock price was inflated throughout the Class Period.").

The Court finds that it is not appropriate at the class certification stage, before fact discovery has concluded, to require Plaintiffs' expert to commit to the particular method he intends to use to measure inflation in this case.  As the Second Circuit Court of Appeals has held:

> [W]e are not persuaded by the Defendants' argument that class certification was improper under Comcast because the Plaintiffs' damages model failed to account for variations in inflation over time. Comcast does not suggest that damage calculations must be so precise

at this juncture.   To the contrary, <u>Comcast</u> explicitly states that
"[c]alculations need not be exact."   569 U.S. at 35.   Thus, even
accepting the Defendants' premises that inflation would have varied
during the class period in this case and that such variation could not be
accounted for, the Defendants' argument fails.

<u>Waggoner v. Barclays PLC</u>, 875 F.3d 79, 106 (2d Cir. 2017); <u>see also</u> <u>Weiner v.</u>

<u>Tivity Health, Inc.</u>, 334 F.R.D. 123, 138 (M.D. Tenn. 2020) (holding that

arguments that a plaintiff's proposed damages model did "not account for time-

varying inflation and potential overreactions" were "premature"); <u>Monroe Cty.</u>

<u>Emps.' Ret. Sys.</u>, 332 F.R.D. at 399 ("[T]he decision of which, if any, of those

tools will be necessary to measure damages in this case depends on development of

the fact record on the merits, it would be inappropriate for [the damages expert] to

conclusively state which he would use at this stage of the litigation."); <u>Pirnik v.</u>

<u>Fiat Chrysler Autos., N.V.</u>, 327 F.R.D. 38, 47 (S.D.N.Y. 2018) ("<u>Comcast</u> does not

require Plaintiffs to account for variations in inflation throughout the class period

at the class certification stage.").

Any argument that Plaintiffs' damages model fails to accurately account for

inflation or is otherwise inaccurate is an argument that goes to the merits of

Plaintiffs' claims regarding damages and is not a part of this Court's inquiry on

Plaintiffs' Motion for Class Certification.   <u>See</u> <u>Pirnik</u>, 327 F.R.D. at 47 (holding

that the argument that "Plaintiffs' model fails to account for factual evidence of

varied inflation . . . is an argument that goes to the merits of whether Plaintiffs can accurately demonstrate price impact and goes beyond the Rule 23 inquiry"); see also Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC, 310 F.R.D. 69, 99-100 (S.D.N.Y. 2015) ("[W]hether plaintiffs will be able to prove loss causation or measure price impact . . . are questions that go to the merits and not whether common issues predominate.").

The Court finds that Plaintiffs' damages methodology is directly linked with their one underlying theory of liability and is applicable on a class-wide basis. Defendants do not argue otherwise. Plaintiffs' damages methodology is, therefore, in accord with the Supreme Court's decision in Comcast. The out-of-pocket damages model in securities cases is hardly new or novel and the Supreme Court's decision in Comcast did not change this or render the model improper. Defendants' criticisms of Plaintiffs' proposed application of the "out-of-pocket" model in this case do not alter this Court's conclusion that predominance exists and certification is appropriate.

## V.     CONCLUSION

For the forgoing reasons, it is hereby **ORDERED** that Lead Plaintiff the Public Employees' Retirement System of Mississippi's Motion for Class Certification and Appointment of Class Representative and Class Counsel

[Doc. 101] is **GRANTED**.

The Court hereby **CERTIFIES** the following class:  All persons who invested in the publicly traded common stock of Acuity Brands, Inc. between October 7, 2015, through April 3, 2017 (the "Class Period") and were damaged thereby.

It is further **ORDERED** that Lead Plaintiff the Public Employees' Retirement System of Mississippi is appointed as Class Representative.

It is further **ORDERED** that Labaton Sucharow LLP and Kessler Topaz Meltzer & Check LLP are appointed as Class Counsel, and Caplan Cobb LLP is appointed as Liaison Counsel.

**IT IS SO ORDERED** this 25th day of August, 2020.

MARK H. COHEN
United States District Judge